UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KAREN L. WARREN,

    Plaintiff,

v.                                                                CAUSE NO.: 3:19-CV-929-TLS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

    Defendant.

**OPINION AND ORDER**

The Plaintiff Karen L. Warren seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income. The Plaintiff argues that the Administrative Law Judge (ALJ) erred in evaluating the medical opinions and her symptoms and limitations, and that her residual functional capacity was improperly formulated and is not supported by substantial evidence. For the reasons set forth below, the Court finds that reversal and remand for further proceedings is required.

**PROCEDURAL BACKGROUND**

On February 2, 2016, the Plaintiff filed an application for supplemental security income, alleging disability beginning on January 1, 2013. AR 38, ECF No. 8. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on July 17, 2018. *Id.* On October 19, 2018, the ALJ issued a written decision, finding the Plaintiff not disabled. *Id.* at 38–53. The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. *Id.* at 6–9. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On October

21, 2019, the Plaintiff filed her Complaint [ECF No. 1], seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening brief [ECF No. 14], the Commissioner filed a response brief [ECF No. 15], and the Plaintiff filed a reply brief [ECF No. 16].

## THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled . . . if [she] if she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 416.920(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since February 2, 2016, the application date. AR 40.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of degenerative disc disease to the cervical and lumbar spine, osteoarthritis to both hands, obesity, fibromyalgia, depression, and anxiety. AR 40.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R.

§ 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 416.920(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing. AR 42.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with exceptions. Specifically, the claimant is able to lift and/or carry 20 pounds occasionally and lift 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. She is never to climb ladders, ropes or scaffolds and crawl, but is occasionally able to climb ramps and stairs, and balance, stoop, kneel and crouch. She is frequently able to reach in all direction with both upper extremities and handle and finger with both hands. The claimant is never to work at unprotected heights and dangerous moving machinery and is never to operate a motor vehicle as part of her work-related duties. Mentally, the claimant is limited to simple and routine tasks and is able to make simple work-related decisions. She is never to interact with the general public, but is able to have occasional interaction with supervisors and coworkers. The claimant must be able to shift positions or alternate position between sitting and standing every 60 minutes for one to two minutes at a time while remaining on task. Last, she will be off task five minutes every hour in addition to her normal breaks.

AR 44.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 416.920(a)(4)(iv), (f). In this case, the ALJ found that the Plaintiff has no past relevant work. AR 51.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy, such as a router, a routing clerk, and a mail sorter. AR 52. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 416.912.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a

"critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, the Plaintiff seeks reversal of the ALJ's decision, arguing that the ALJ improperly evaluated the medical opinion evidence and her symptoms and limitations, and erred in formulating her RFC. For the following reasons, remand for further proceedings is required.

**A.     The Medical Opinion Evidence**

The Plaintiff argues that the ALJ improperly evaluated the opinions of her treating physician, Frank Utes, D.O., her treating psychologist, Latisha Love, Psy.D., and the state agency medical and psychological consultants. The treating physician rule, applicable in this case,[1] provides that the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical

---

[1] On January 18, 2017, the Commissioner published new regulations, "Revisions to Rules Regarding the Evaluation of Medical Evidence," which addressed 20 C.F.R. § 416.927. However, the new regulations only apply to claims filed on or after March 27, 2017, and the claim in this case was filed in 2016.

5

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (explaining that the opinion of a treating physician "that is consistent with the record is generally entitled to 'controlling weight'").

If an ALJ does not give the treating physician's opinion controlling weight, the ALJ must apply the factors set forth in the regulations to determine what other weight to give the opinion. 20 C.F.R. § 416.927(c)(2); *see also Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (requiring an explicit discussion of certain § 404.1527(c)(2) factors on remand). The factors are whether there is an examining relationship; whether there is a treatment relationship, and if so, the length of the relationship, the frequency of examination, and the nature and extent of the relationship; whether the opinion is supported by relevant evidence and by explanations from the source; the consistency of the opinion with the record as a whole; whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)–(6). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore*, 743 F.3d at 1127).

1. *Frank Utes, D.O., Treating Physician*

Dr. Utes was the Plaintiff's treating physician and had been seeing the Plaintiff since 2014. AR 120, 1110. In support of the Plaintiff's disability claim, Dr. Utes completed a Medical Assessment-Questionnaire Form where he provided an opinion about the Plaintiff's limitations. *Id.* at 1109–10. The ALJ summarized Dr. Utes' opinion as follows:

> Frank Utes, D.O. opined that the claimant could lift and/or carry up to 10 pounds in an 8-hour period, but has difficulty with bending, squatting, kneeling and turning her body. She has difficulty with ambulation and can only stand for 15 minutes in

>an 8-hour workday and sit 30 minutes in an 8-hour workday. She is able to occasionally reach down towards the floor.

*Id.* at 50. The ALJ assigned this opinion little weight because it was "inconsistent with the claimant's normal physical examinations, her refusal to go to physical therapy for almost two years, and her admission that she did not want to get a job when her medical professionals recommended that she do so because she would harm her ability to get disability." *Id.* The ALJ also noted that the Plaintiff "inquired about assistance to pay off her entire home," "admitted to lying on her disability form," and "was able to take over caring for her three grandchildren." *Id.*

The first problem with this determination relates to allegations that the Plaintiff lied on her disability form. In October 2016, the Plaintiff spoke with staff at the Four County Counseling Center and requested that the case manager fill out the disability form on her behalf because she was overwhelmed. AR 846. The case manager declined. *Id.* After finally filling out the form, the Plaintiff allegedly told the case manager, "Oh yeah. Well I lied in it. It will help." *Id.* When the case manager told the Plaintiff that this was fraud, the Plaintiff responded, "Well I know. But if I don't then I won't get it and I need help. I know. I know." *Id.* The notes from Four County provide that the Plaintiff "did not correct her forms before faxing them to Social Security. [The Plaintiff] believes she can only receive help if she lies or omits pieces of information." *Id.* The next month, Plaintiff asked about obtaining financial resources for grandparents taking care of grandchildren. *Id.* at 855. Four County staff told the Plaintiff that she would not be eligible for the assistance program and suggested that she obtain a part-time job. *Id.* The Plaintiff responded, "that would mess up my Social Security." *Id.* After Staff again encouraged her to seek a job, the Plaintiff "scoffed and said, 'What . . . at the two gas stations here?'" *Id.*

The ALJ appeared to rely on these allegations when discounting Dr. Utes' opinion, but he did not explain why that makes sense. The was no evidence mentioned to suggest that Dr. Utes

relied on the allegedly fraudulent form in rendering his opinion or that the allegations connect to his opinion in any other way. The record instead shows that Dr. Utes had been treating the Plaintiff since 2014 as her general physician. *Id.* at 1110; *see id.* at 343–414, 864–954, 995–1016, 1151–80 (Dr. Utes' treatment records). Based on that history, Dr. Utes presumably had an opinion based on information entirely independent of those allegations, and it deserved greater consideration by the ALJ. *See* 20 C.F.R. § 416.927(c)(2) (favoring opinions from sources that have treated the claimant for longer). While the ALJ might have discounted Dr. Utes' opinion if it was based on the Plaintiff's subjective complaints, *see Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016), Dr. Utes seems to have adopted a broader approach that discounts all support for the Plaintiff's claim based on these allegations. Ultimately, the record and the ALJ's explanation (or lack thereof) do not support such a reason for giving Dr. Utes' opinion little weight. *See Beardsley*, 758 F.3d at 837 (requiring the ALJ to "build an accurate and logical bridge between the evidence and the result").

The second issue with the ALJ's decision involves his conclusion that Dr. Utes' opinion was inconsistent with certain medical evidence. While the ALJ was not required to "mention every piece of evidence in [his] opinion, [he] cannot ignore a line of evidence that suggests a disability." *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) (citing *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)). But here, the only medical evidence the ALJ even referenced in connection with Dr. Utes' opinion are findings that the Plaintiff frequently had "normal gait, strength, and range of motion." AR 50. While those findings exist, the ALJ never mentioned how the opinion might be consistent with objective evidence showing Plaintiff's degenerative disc disease and lumbar spondylosis, *id.* at 509–10, 781–82, 1259, as well as her history of both fibromyalgia and arthritis, *see, e.g., id.* at 649, 652, 705, 716–21, 890–91, 900–01, 1020–21,

8

1028, 1043–44. Thus, the ALJ erred by focusing exclusively on the physical examinations without mentioning—let alone discussing—the documented history of Plaintiff's ailments, which provide some support for the limitations identified by Dr. Utes. *See Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018) ("An ALJ must grapple with lines of evidence that are contrary to [his] conclusion, and here the ALJ did not do so.").

      The Defendant argues that the ALJ addressed these medical issues in his opinion and that the Plaintiff is attempting to reweigh the evidence. While it is true that the ALJ discussed the Plaintiff's medical issues at times in his decision, the problem lies in how this evidence was considered in light of Dr. Utes' opinion. Under the regulations, the ALJ is to consider whether the physician's opinion is consistent "with the record as a whole." 20 C.F.R. § 416.927(c)(4). Here, the ALJ did not consider the entire record but instead focused on these specific, positive physical examinations that appear to undermine Dr. Utes' opinion. It may be that this evidence does not ultimately change the ALJ's decision about Dr. Utes' opinion; however, the ALJ is still required to give a fair representation of the record in his explanation. That did not occur here.

      The third issue with the ALJ's analysis is that he failed to explain how the Plaintiff's role in caring for her grandchildren undermines Dr. Utes' opinion. The ALJ's analysis did not describe any specific activities related to caring for her grandchildren nor connect them to Dr. Utes' recommended limitations. In fact, some of the evidence about childcare supports Dr. Utes' opinion—for example, the Plaintiff's testimony that her grandchildren help her with the dishes and laundry, that she needs to take breaks throughout the day, and that her husband or granddaughter often prepare meals. AR 124–26; s*ee Zurawski*, 245 F.3d at 887 (explaining that washing dishes, helping children prepare for school, doing laundry, and preparing meals were "fairly restricted" activities and did not necessarily undermine the claim of disabling pain). The

ALJ did not mention this evidence related to the Plaintiff's childcare responsibilities, thereby ignoring important context that undercuts his analysis of Dr. Utes' opinion.

Finally, the ALJ improperly relied on the Plaintiff's failure to go to physical therapy when assigning Dr. Utes' opinion little weight. At the outset, it is not clear why the Plaintiff's failure is relevant to the accuracy of Dr. Ute's opinion. While the information is relevant for assessing the Plaintiff's subjective complaints, *see* 20 C.F.R. § 404.1529(c)(3)(v), there is not a clear analog in the regulations governing the assessment of medical opinions, *see* 20 C.F.R. § 416.927(c)(2). Even if there is relevance, the ALJ needed to provide a rationale as to why it specifically undermined Dr. Utes' opinion in order for this Court to uphold the determination. Moreover, when an ALJ relies on this type of evidence, there is a duty to ask the claimant why she failed to follow a treatment plan. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (finding fault where "the ALJ did not ask [the plaintiff] why she did not attend all of her physical therapy sessions, or why she did not comply with her home exercise program"). Here, the record provides no indication that the ALJ offered the Plaintiff any opportunity to explain her failure to go to physical therapy.

Accordingly, remand is necessary for the ALJ to properly assess Dr. Utes' medical opinion in light of the errors identified above. This will also provide the ALJ an opportunity to better explain his analysis in relation to the relevant factors provided in 20 C.F.R. § 416.927(c). *See Scrogham v. Colvin*, 765 F.3d 685, 697–98 (7th Cir. 2014) (explaining that the ALJ should "have addressed these factors in her opinion to enable us to review whether she engaged in the correct methodology"). While the ALJ is not required to explicitly address each of the factors, *see Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013), a recurrent problem in the ALJ's decision was a failure to explain how certain evidence was relevant to Dr. Utes' opinion as

opposed to the Plaintiff's subjective complaints. On remand, the ALJ should account for these differences, and the regulations governing medical opinions and subjective complaints should help guide that discussion.

2.  *Latisha Love, Psy.D., Treating Psychologist*

The Plaintiff also argues that the ALJ erred in evaluating the opinion of her treating psychologist, Dr. Latisha Love. Dr. Love completed a Mental Assessment of Ability to Do Work-Related Activities form that was submitted with the Plaintiff's disability claim. *See* AR 1242–43. In the form, Dr. Love opined, among other things, that the Plaintiff would struggle with "work related stress or interaction with others if she became overwhelmed or met with hostility or perceived threat," that she can be "verbally abrasive," and that she has challenges with appointments and reliability. *Id.* at 1242. Dr. Love expected that the Plaintiff would be off task 5% of the time and that she would be absent twice a month. *Id.* at 1243. However, Dr. Love also noted that the Plaintiff "shows ability to engage in meaningful thought with no cognitive deficits," and that she is capable of sustaining work on a continuing basis. *Id.* at 1242–43. The ALJ ultimately gave Dr. Love's opinion "some weight," crediting the opinions on the Plaintiff's ability to sustain work, manage work decisions and instructions, and interact with coworkers and supervisors. *Id.* at 49. The ALJ did not credit other portions of the opinion, concluding that "there is no evidence that the claimant would be off tasks, would miss two days of work, or that she would be unreliable." *Id.* The ALJ also noted the allegations that Plaintiff lied on her disability form and chose not to work because of her disability application. *Id.*

To start, the Plaintiff reasserts her argument that the ALJ erred in how he considered allegations that the Plaintiff lied on her disability form when assigning weight to Dr. Love's

11

opinion. As with Dr. Utes' opinion, the ALJ failed to explain how these allegations are relevant to Dr. Love, and that will need to be corrected on remand.

Turning to the arguments that are unique to Dr. Love's opinion, the Plaintiff contends that the ALJ was incorrect to conclude that there was "no evidence that the claimant would be off tasks, would miss two days of work, or that she would be unreliable." *Id.* She attempts to rebut this with the following evidence: (1) a psychological consultant opined that she has some difficulty with concentration and attention, suggesting that she would be off task, *see id.* at 666; (2) the number of medical and counseling visits that she had in 2016, 2017, and 2018 show that she would miss more than two days a month, *see* Pl.'s Br. Ex. 1, ECF No. 14-2; and (3) the instances where she missed medical appointments indicate that she is unreliable, *see* AR 848, 851–52, 1099, 1100–01, 1103–04.

When considering this evidence, the Court is not convinced that this argument would warrant remand by itself. For starters, despite the ALJ questioning Dr. Love's opinion that the Plaintiff would be off task 5% of the time, the ALJ still included that the Plaintiff would be off task for five minutes every hour in her RFC. *Id.* at 44. As for the number of medical and counseling appointments the Plaintiff had in previous years, this evidence provides only modest support for Dr. Love's opinion that the Plaintiff would miss two days of work per month due to her psychological impairments. Looking at the underlying appointments, they show that a majority of them were for non-psychological treatment unrelated to Dr. Love's opinion, *compare* Pl.'s Br. Ex. 1, *with* AR 343–414 (Ex. 2F), 425–63 (Ex. 4F), 515–74 (Ex. 7F), 658–63 (Ex. 11F), 682–784 (Ex. 15F), 858–63 (Ex. 19F), 864–954 (Ex. 20F), 995–1016 (Ex. 24F), 1151–80 (Ex. 34F), and the 2018 psychological appointments may not have even required absence from a potential job, *see* AR 1252–54 (listing appointments that began between 5:00 PM and 7:30 PM,

and which lasted 30–45 minutes). Similarly, even if there is some evidence suggesting reliability concerns, Dr. Love's own opinion on the issue was relatively lukewarm, thus undermining the evidence's effect. *See id.* at 1242 ("Some challenge w/ organization for appointments so *potential* challenges w/ reliability." (emphasis added)). Ultimately, the evidence the Plaintiff identifies here would not justify remand because it is hard to imagine it changing the ALJ's decision on Dr. Love's opinion. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (explaining that a court will not remand for further explanation if "can predict with great confidence that the result on remand would be the same"). Nevertheless, because remand is already necessary, the ALJ will have an opportunity to consider this evidence.

3. *State Medical and Psychological Consultants*

The Plaintiff finally argues that the ALJ erred by giving the state medical and psychological consultants' opinions great weight. As with the other opinions, the reliance on allegations that the Plaintiff was dishonest on her disability form was improper and will need to be reassessed on remand. Additionally, the Plaintiff identifies issues related to the evaluation of the psychological consultant's opinion that should be reconsidered.

The psychological consultant opined that the Plaintiff "is mildly limited in understanding, remembering and applying information and moderately limited in interacting with others, concentrating, persisting and maintaining pace and adapting and managing oneself." AR 50. The ALJ gave this opinion "great weight" because it was consistent with the Plaintiff's "essentially normal mental examinations and most of Dr. Love's opinions." *Id.*

The Plaintiff argues that the ALJ did not adequately account for evidence that ran counter to the psychological consultant's opinion. As with Dr. Utes' opinion, the ALJ took a narrow view of the evidence when concluding that the consultant's opinion was consistent with the

13

"essentially normal mental examinations." *Id.* The mental health professionals at Four County Counseling Center diagnosed the Plaintiff with a mood disorder and depression, *see id.* at 469–470, 834, and provided notes describing the Plaintiff's numerous appointments, *see generally id.* at 464–95, 829–57, 1097–1107, 1251–57. While those notes also reflect "normal" findings with things like eye contact and memory, they also described the Plaintiff's mood as depressed and her affect sad and diagnosed her with major depressive order. *See* AR 833–34. The ALJ cannot disregard those findings as "essentially normal" without explanation, especially because they seem to suggest greater psychological limitations. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (stating that, particularly with mental illnesses, "[a]n ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence").

Likewise, the ALJ found that the Plaintiff's family issues were "ordinary," but failed to account for evidence that the Plaintiff's grandchildren were once taken from her home, AR 467, 472, and that counseling sessions document continuing difficulty with resolving conflicts between her grandchildren and raising them with her husband, *see, e.g.*, *id.* at 475–76, 478–79, 481. Those circumstances are hardly "ordinary," and the ALJ should have addressed them when analyzing the psychological consultant's opinion.

The Plaintiff finally takes issue with how the ALJ considered her daily activities in deciding how much weight to give the psychological consultant's opinion. However, unlike the ALJ's previous consideration of the Plaintiff's care for her grandchildren, the ALJ provided a better explanation here. The ALJ reasoned that the Plaintiff's ability to drive, shop, go to church, attend school events, and deal with teachers shows that she has some capacity to interact with others and manage herself even with her anxiety. *Id.* at 50. Because the ALJ connected specific activities to specific limitations, the Court was able to understand why the evidence was relevant

14

and supported the psychological consultant's opinion. But, again, since remand is needed to address other issues, the Plaintiff will have an opportunity to provide additional context about her activities and their impact to her psychological limitations.

## B.     The Plaintiff's Symptoms and Limitations

In her appeal, the Plaintiff also contends that the ALJ erred in assessing her symptoms and limitations, specifically as it relates to the allegations that she lied on her disability form. The Plaintiff argues that the ALJ engaged in an improper character evaluation and, thus, violated Social Security Ruling 16-3p.

When evaluating a disability claim, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 416.929(a); SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). Subjective allegations of disabling symptoms alone cannot support a finding of disability. 20 C.F.R. § 416.929(a). The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See id.* § 404.1529(c)(3).

Social Security Ruling 16-3p[2] provides guidance on how ALJs "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR

---

[2] Social Security Ruling 16-3p governs the ALJ's decision in this case because it was decided on October 19, 2018. *See* SSR 16-3p, 2017 WL 5180304, at *1 ("[O]ur adjudicators will apply SSR 16-3p when we make determinations and decision on or after March 28, 2016.").

16-3p, 2017 WL 5180304, at *1. When SSR 16-3p was issued in March 2016, it superseded SSR 96-7p, and "eliminat[ed] the use of the term 'credibility' . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. This change was "meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Put differently, SSR 16-3p "states that an ALJ shall not make any general 'credibility determination' about a claimant," but rather, "the ALJ should evaluate the credibility of each alleged symptom individually." *Srp v. Colvin*, No. 15-cv-3006, 2016 WL 4487831, at *4 (C.D. Ill. Aug. 25, 2016). In doing so, the ALJ considers the same factors for evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. *See* SSR 16-3p2017 WL 5180304, at *7–8; *see also Doyle v. Colvin*, No. 4:15-CV-76, 2016 WL 5349500, at *4 (N.D. Ind. Sept. 26, 2016) ("Nothing else has changed, [and] an ALJ must still provide good reasons for rejecting a claimant's assertions as to his pain and limitations." (citation omitted)).

As discussed in the previous section, the ALJ seemed to use the allegations that the Plaintiff lied on her disability form to discount most of the evidence supporting her claim. There was no effort to distinguish between statements the Plaintiff made on the disability form and other statements she has made, including testimony given during the hearing or statements made to her medical providers. Thus, it appears that the ALJ made a general credibility determination about the Plaintiff rather than assessing the credibility of her symptoms and limitations individually.

Having said that, this does not mean those allegations are irrelevant since ALJs can consider evidence that a claimant is exaggerating symptoms. *See Wilson v. Berryhill*, 737 F.

16

App'x 286, 289 (7th Cir. 2018) (concluding that the ALJ permissibly rejected a medical opinion because, among other things, it relied on the claimant's exaggerated allegations and the claimant had misled his doctor about his physical limitations). The problem here was the blanket fashion in which the ALJ discounted all the Plaintiff's symptoms and limitations (as well as medical opinions) based on allegations related to a specific disability form. *See Mendenhall v. Colvin*, No. 3:14-CV-3389, 2016 WL 4250214, at *5 (C.D. Ill. Aug. 10, 2016) (requiring remand because the ALJ violated SSR 16-3p by using "his finding as to Plaintiff's credibility" to discredit the Plaintiff's claims and medical opinions); *McCammond v. Colvin*, No. 15 C 6589, 2016 WL 3595736, at *3 (N.D. Ill. July 5, 2016) (explaining that an ALJ can no longer conclude under SSR 16-3p that, "if Plaintiff lied about one thing, then he was less reliable in what he said concerning something else"). On remand, the ALJ will have an opportunity to reconsider these allegations and offer an explanation as to which specific assertions they may affect.

C.    **The Plaintiff's Residual Functional Capacity**

Finally, the Plaintiff argues that ALJ erred in formulating her RFC by failing to account for various limitations. However, since remand is required due to the ALJ's errors in assessing the medical opinions and the Plaintiff's symptoms and limitations, this issue need not be addressed at this time. Proper consideration of those issues may alter the ALJ's RFC determination, and the Plaintiff can address her concerns on remand.

D.    **Award of Benefits**

The Plaintiff asks the Court to reverse and remand for an award of benefits, or, in the alternative, for a new hearing and decision. "An award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord*

*v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005)). Based on the discussion above, an immediate award of benefits is not appropriate.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 14] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion. The Court DENIES the Plaintiff's request to award benefits.

SO ORDERED on January 7, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
